Case No. 21-1785

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

**TIMOTHY KING, et al.,**

*Plaintiffs*,

and

**L. LIN WOOD,**
**Interested Party – Appellant**

v.

**GRETCHEN WHITMER; JOCELYN BENSON; CITY OF DETROIT, MI,**
*Defendants – Appellees*

**On Appeal from the Eastern District of Michigan**
**at Detroit, Case No. 2:20-cv-13134**

**OPENING BRIEF OF APPELLANT L. LIN WOOD**

Paul J. Stablein
Paul Stablein, PLLC
380 North Old Woodward, Suite 320
Birmingham, Michigan 48009
Telephone: (248) 540-1600
Facsimile: (248) 642-7878
Email: PaulStablein@StableinLaw.com
*Attorney for Appellant L. Lin Wood*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of the Rules of the Sixth Circuit Court of Appeals, L. Lin Wood certifies that he is a natural person, and, therefore, has no parent corporation or any publicly held corporation that owns 10% or more of its stock nor does he own more than 10% of any publicly held corporation.  Fed. R. App. P. 26.1; 6th Cir. R. 26.1.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................................ ii

TABLE OF AUTHORITIES .................................................................................. iii

JURISDICTIONAL STATEMENT ...................................................................... viii

STATEMENT OF THE ISSUES .............................................................................ix

STATEMENT OF THE CASE ................................................................................1

SUMMARY OF THE ARGUMENTS ...................................................................12

ARGUMENT ........................................................................................................15

I.   The district court erred when it imposed monetary and non-monetary sanctions against Mr. Wood where no evidence was presented in the trial court to establish Mr. Wood signed, filed, submitted, or advocated any pleading, motion or other paper presented to the district court in violation of Federal Rule of Civil Procedure 11(b). .............................................................................15

   A.   Standard of Review ......................................................................................15

   B.   The Defendants Produced No Evidence in the Lower Court from which to Conclude Mr. Wood "Presented" a Pleading or Motion to the Court..........15

   C.   Mr. Wood Did Not File the Complaint .........................................................18

   D.   Mr. Wood Did Not Sign the Complaint .......................................................20

   E.   The Lower Court Found No Evidence Mr. Wood Had Presented any Pleading ..................................................................................................................23

   F.   Mr. Wood Was Not Responsible for the Pleadings ......................................24

II.  **The district court erred in when it imposed monetary and non-monetary sanctions against Mr. Wood pursuant to 28 U.S.C. § 1927 where the state defendants did not request sanctions against Mr. Wood.** .........................30

III. **The district court erred in imposing sanctions against Mr. Wood pursuant to its inherent authority when Federal Rule of Civil Procedure 11 should**

**be treated as the exclusive remedy for sanctions for any violative pleadings.** .................................................................................................33

A.  The Trial Court Abused its Discretion By Failing to Analyze Each Attorney Individually .................................................................38

B.  Any Relief in Favor of the State Defendants Against Mr. Wood Should be Reversed. ..................................................................43

**IV. The Trial Court Abused its Discretion in The Nature of Sanctions Assessed** .................................................................................................43

A.  The Trial Court Abused its Discretion in The Amount of Attorney Fees Awarded to the City of Detroit ...............................................45

1. The City of Detroit's Time Entries Are Unreasonable and Excessive When Compared with the State Defendants.................................45

2. The Hours Awarded to the City of Detroit Were Excessive ...........................46

**V.**  Merits of the Pleadings Filed by Others.........................................49

A.  Mr. Wood Adopts by Reference the Arguments Made by the Other Attorneys Appealing the Same Trial Court Rulings ...................................49

CONCLUSION ...............................................................................49

CERTIFICATE OF COMPLIANCE .....................................................51

# TABLE OF AUTHORITIES

## Cases

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689

    (1997) ............................................................................................................. 27

*Animal Welfare Inst. v. Feld Entm't, Inc.*, 944 F. Supp. 2d 1 (D.D.C. 2013) ......... 37

*BDT Prods., Inc. v. Lexmark Intern, Inc.*, 602 F.3d 742 (6th Cir. 2010) ............... 40

*Big Rapids Mall Associates v. Mut. Trust Life Ins. Co*., 98 F.3d 926(6th Cir.1996) 5

*Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665 (9th Cir.1980) ................ 21

*Carver v. Bunch,* 946 F.2d 451 (6th Cir. 1991) ....................................................... 37

*Chambers v. NASCO, Inc*., 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)

     ...................................................................................................................... 36, 37

*Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 110 S. Ct. 2447, 110 L. Ed. 2d 359

    (1990) ............................................................................................................. 16

*Fidelity Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745 (7th Cir.

    2005) ............................................................................................................. 38

*Fuery v. City of Chicago*, 900 F.3d 450 (7th Cir. 2018) ......................................... 39

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 197 L. Ed. 2d 585 (2017)

     ............................................................................................................................ 41

*In re Ruben*, 825 F.2d 977 (6th Cir. 1987) ....................................................... 41, 46

iii

*INVST Fin. Group v. Chem-Nuclear Sys.*, 815 F.2d 391 (6th Cir. 1987) ..............48

*Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224 (6th Cir. 1989) ........................................................................................47

*Kenyon Int'l Emergency Servs. Inc. v. Malcolm*, No. 12-20306, 2013 U.S. App. LEXIS 9704 (5th Cir. 2013) ...............................................................38

*Morris v. Wachovia Sec., Inc.*, No. 3:02cv797, 2007 WL 2126344 (E.D. Va. 2007) ....................................................................................27, 28, 29, 30

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999) ..............................................................................................27

*Pan–Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539 (5th Cir.1980)...............20

*Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 110 S. Ct. 456, 107 L. Ed. 2d 438 (1989) ........................................................................................18

*Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater,* 465 F.3d 642 (6th Cir. 2006) ......................................................................................34, 39

*Ridder v City of Springfield*, 109 F.3d 288 (6th Cir. 1997).....................................34

*Rossi v. Trans World Airlines, Inc.*, 507 F.2d 404 (9th Cir.1974) .........................21

*Salkil v. Mount Sterling Twp. Police Dep't,* 458 F.3d 520 (6th Cir. 2006).............34

*Sentis Group, Inc. v. Shell Oil Co.*, 559 F.3d 888 (8th Cir. 2009) .........................38

*State Mut. Life Assurance Co. of Am. v. Deer Creek Park*, 612 F.2d 259 (6th Cir.1979) ................................................................................................21

*Terry v. Tyson Farms, Inc.*, 604 F.3d 272 (6th Cir. 2010) ......................................18

*Tucker v. Williams*, 682 F.3d 654 (7th Cir. 2012)....................................................39

*Turoff v. May Co.*, 531 F.2d 1357 (6th Cir. 1976) ...................................................21

*United States v Aleo*, 681 F.3d 290 (6th Cir. 2012) .........................................36, 39

*United States v Throckmorton,* 98 U.S. 61 (1878) ..................................................44

*United States v. One 1987 BMW 325*, 985 F.2d 655 (1st Cir. 1993) ...............37, 38

*United States v. Rogers Cartage Co.*, 794 F.3d 854 (7th Cir. 2015)......................38

*Williams v. Adams*, 660 F.3d 263 (7th Cir. 2011) ............................................39, 47

## Statutes

28 U.S.C. §1291 ...................................................................................... viii

28 U.S.C. §1331 ...................................................................................... viii

28 U.S.C. §1343 ...................................................................................... viii

28 U.S.C. §1927 ...................................................................................passim

42 U.S.C. §1983 ...................................................................................... viii

## Rules

E. D. Mich. LR 83.20(a)...............................................................................2

E. D. Mich. LR, App'x ECF, R10...................................................................7, 23

E.D. Admin. Order 08-AO-009, *Attorneys' Responsibilities to Other Counsel*, ¶ 1

(January 23, 2008) ............................................................................31

Fed. R. App. P. 28(i) ................................................................53

Fed. R. App. P. 3 ................................................................ viii

Fed. R. Civ. P. 11(b) ......................................................13, 17

Fed. R. Civ. P. 11(c) ..........................................2, 14, 28, 37

Fed. R. Civ. P. 5(d)(3)(C) ............................................22, 23

Fed. R. Evid. 802(c) ...............................................................20

## **STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Defendant-Appellant, L. Lin Wood, respectfully requests oral argument due to the complexity and number of issues presented herein. The sanctions order by the lower court are extraordinary and blanketed every rule or statute granting the court authority to sanction lawyers. The lack of specificity in the lower court's order simply shifts that burden to the parties and this Honorable Court to sort it out. Oral argument is necessary to that end.

## JURISDICTIONAL STATEMENT

The complaint initiating this action was filed in the district court on November 25, 2020, alleging violations of, inter alia, 42 U.S.C. §1983. (Complaint, R. 1). The district court had jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343. All of the claims were voluntarily dismissed on January 14, 2021. (Notices of Voluntary Dismissal, R. 86 - R. 91).

Following dismissal, the trial court entered a final judgment that imposed sanctions against Interested Party-Appellant L. Lin Wood on December 2, 2021. (Judgment, R. 180). Mr. Wood filed his notice of appeal on December 3, 2021. (Notice of Appeal, R. 181). This Court has jurisdiction of this appeal under Federal Rules of Appellant Procedure 3 and 4, Fed. R. App. P. 3, 4, and 28 U.S.C. §1291.

## <u>STATEMENT OF THE ISSUES</u>

I.   Whether the district court erred when it imposed monetary and non-monetary sanctions against Mr. Wood where no evidence was presented in the trial court to establish Mr. Wood signed, filed, submitted or advocated any pleading, motion or other paper presented to the district court in violation of Federal Rule of Civil Procedure 11(b).

II.  Whether the district court erred in when it imposed monetary and non-monetary sanctions against Mr. Wood pursuant to 28 U.S.C. § 1927 where the state defendants did not request sanctions against Mr. Wood.

III. Whether the district court erred in imposing sanctions against Mr. Wood pursuant to its inherent authority when Federal Rule of Civil Procedure 11 should be treated as the exclusive remedy for sanctions for any violative pleadings.

IV.  Whether the Lower Court Abused its Discretion in The Nature of Sanctions Assessed.

V.   Whether the Pleadings Filed by Others Had Merit.

## **STATEMENT OF THE CASE**

The district court entered an order sanctioning every attorney whose name appeared, whether authorized or not, on the complaint, the amended complaint, the motion for injunctive relief and any subsequent motions or pleadings. The district court imposed the exact same sanction against every attorney regardless of any finding as to what role, if any, each attorney played in the drafting or filing of the papers in this matter: pay $175,250.00 directly to the defendants, attend 12 hours of mandatory legal education, and the court referred every attorney to their respective state bar associations for investigation as to whether they should be suspended or disbarred. (Opinion and Order, R. 172, PageID.6998-9; Judgment, R. 180, PageID.7170). The trial court concluded that it was sanctioning all of the attorneys pursuant to Rule 11, 28 U.S.C. § 1927 and the court's inherent authority, (Opinion and Order, R. 172, PageID.6992), without any regard to what actions, if any, each of the lawyers took.

Some time, between June 17, 2021, and June 29, 2021, Mr. Wood received a telephone call from one of the attorneys for the Plaintiffs in this case who informed him that an order had been issued in Detroit, Michigan, directing him to appear for a hearing in the United States District Court for the Eastern District of Michigan. (June 17 Order, R. 123, PageID.5134). Though he was aware of the lawsuit in Michigan having to do with the results of the 2020 election, and was an ardent

1

supporter of the former president, he was perplexed. He was never admitted in federal court in Michigan. He had not filed the lawsuit in Michigan. He had not participated in any of the litigation in Michigan.

The Defendants, Whitmer and Benson (the State Defendants), had sought sanctions pursuant to 28 U.S.C. § 1927 alleging "Plaintiffs' counsel" 1) "vexatiously multiplied the proceedings," and 2) filed legal claims they knew or should have known "were frivolous." (State Defendants' Motion, R. 105, PageID 4337). The State Defendants also sought sanctions pursuant to the federal court's inherent authority. Id. The State Defendants did not seek, in that motion, sanctions against Mr. Wood. (State Defendant's Brief, R. 105, PageID.4348) ("Plaintiffs' counsel— Sidney Powell, Stefanie Lambert Junttila, Greg Rohl, and Scott Hagerstrom—lost sight of the professional duties owed to this Court.") Intervenor City of Detroit had sought sanctions pursuant to Federal Rule of Civil Procedure 11(c), to which the State Defendants had joined. (City's Motion, R. 78; State's Concurrence, R. 84, respectively); Fed. R. Civ. P. 11(c).

Mr. Wood was not, nor had he ever been, a member of the bar of the Eastern District of Michigan. Nor had he ever practiced before any judicial officer of the Eastern District of Michigan. See E. D. Mich. LR 83.20(a) ("Practice in this court" defined.) The only instance of his appearance in the district court occurred at the July 12, 2021, motion hearing, where he appeared, via Zoom, because the trial court

ordered the appearance of "each attorney whose name appears on any of Plaintiffs' pleadings or briefs…." (Order, R. 123, PageID 5134). Mr. Wood's name "appears" on the complaint (Complaint, R. 1, PageID 75) and the amended complaint (Amended Complaint, R. 6, PageID 957). It appears on no other document filed in the trial court.

Mr. Wood informed the trial court at the hearing that the only reason he had appeared was based on the trial court's order. (Transcript, R. 157, PageID.5421). He did not sign the complaint or amended complaint (Id.), he did not work on either document (Transcript, R. 157, PageID.5323), he did not discuss the complaint or amended complaint with any of the lawyers who did, nor did he authorize anyone to sign his name in his stead (Transcript, R. 157, PageID.5362). He never knowingly appeared as counsel for any plaintiff in the litigation. His counsel at the July hearing verified the same.

> MR. WOOD: If I might answer. I played absolutely no role in the drafting of the complaint.
> THE COURT: Okay.
> MR. WOOD: Just to be clear.
> MR. CAMPBELL: All my clients agree on that, your Honor.
> (Transcript, R. 157, PageID.5323)
> *  *  *
> MR. CAMPBELL:    …. Lin Wood didn't have any role in this.
> (Transcript, R. 157, PageID.5347)

Even the trial court concluded at the hearing that the principal drafters of the complaint and amended complaint were Sidney Powell and Howard Kleinhendler. (Transcript, R. 157, PagelD.5324) ("THE COURT: Okay. We're fine. I'm clear on that. I'm clear on that….I understand that Mr. Wood has not played any role in that, but under -- the answer that I am taking is, is that Mr. Howard Kleinhendler, as well as Ms. Sidney Powell, were the principal drafters of the complaint.") Both acknowledged responsibility for it, and neither provided proof that Mr. Wood had any responsibility for drafting or filing the pleadings. In closing, Ms. Powell's position was clear: "I take full responsibility myself for the pleadings in this case. Ms. Newman, Mr. Wood, Mr. Johnson, and local counsel had no role whatsoever in the drafting and content of these complaints. It was my responsibility and Mr. Kleinhendler's, not theirs." (Transcript, R. 157, PagelD.5533).

Even had there been some confusion as to what role Mr. Wood did or did not have, the trial court denied Mr. Wood's request for an evidentiary hearing, though he made it at the hearing and in his pleadings filed subsequently to it. (Transcript, R. 157, PagelD.5422, 5423, 5509; Brief in Response to Rule 11, R. 162, PageID.6123). An evidentiary hearing would have easily fleshed out the fact that, contrary to the allegations of defense counsel, Mr. Wood had no responsibility with the drafting or filing of the two documents the trial court used to sanction him. The trial court gave Mr. Wood short shrift in his request.

First, at the hearing, the court telegraphed its intent to forego the taking of testimony: "Before I give you an opportunity for an evidentiary hearing, *I don't know that I will be doing that*, I would allow you an opportunity to file a brief stating your position, all right,…." (Transcript, R. 157, PageID.5509) (Emphasis supplied.) Then the court brushed off his evidentiary hearing request in a footnote in the order imposing sanctions: "He is entitled to no such thing." (Order, R. 172, PageID.6921). The lower court relied on this Honorable Court's decision in *Big Rapids Mall Associates v. Mut. Trust Life Ins. Co*., 98 F.3d 926, 929 (6th Cir.1996) (holding that "[a] hearing is not necessarily required where the court has full knowledge of the facts and is familiar with the conduct of the attorneys"). However, the district court neglected to consider this Court's admonition that followed. "Since the hearing on the stay did not provide the bankruptcy judge with any explanation of the conduct by the lawyers, a subsequent evidentiary hearing on the motions for sanctions might well have been the wisest course to follow." *Id*. at 929-30. On the record before the lower court, it would have been impossible for the court to conclude that it had "full knowledge of the facts" and was "familiar with the conduct of the attorneys." Everything the lower court concluded was not based on any action Mr. Wood had taken in the court's presence – he had never appeared before the lower court. The lower court was not familiar at all with the conduct of Mr. Wood sufficient to conclude sanctions were appropriate.

5

In light of the sparse factual record below, the trial court erred in sanctioning Mr. Wood pursuant to Rule 11, 28 U.S.C. §1927, and the court's own inherent authority based only on his name appearing on the initial complaint and amended complaint. The error in large part arose from the trial court's approach of grouping all nine attorneys together, and then simply assessing guilt because, in the lower court's view, the conduct of any of them was the conduct of all of them. As will be shown below, the State Defendants never moved for sanctions against Mr. Wood or otherwise requested sanctions against him in their 18 U.S.C. § 1927 motion.[1] The trial court abused its discretion in imposing sanctions against Mr. Wood.

The procedural history of the litigation in the lower court has been set forth adequately by the other attorneys appealing the lower court's order and need not be restated here. Regardless, Mr. Wood has no independent knowledge of what occurred in the lower court, because he was not involved in the litigation.

Mr. Wood is an attorney licensed to practice in the State of Georgia. (Opinion, R. 172, PageID.6999). He is not licensed to practice law in Michigan, and he has never sought admission to the Eastern District of Michigan as dictated by the local court rules of the district. E. D. Mich. LR 83.20(d). Therefore, he never filed an

---

[1] The State Defendants did, subsequent to the voluntary dismissal of the action against all defendants, concur in the City's Rule 11 motion. (Motion, R. 84).

appearance in the case. He did not sign the complaint or the amended complaint, at least as the rules call for electronic signatures (E. D. Mich. LR, App'x ECF, R10), nor did he present the lower court with any pleading, written motion or other paper. His name is listed under the heading, "Of Counsel," with an address in Georgia, though the zip code listed is not Mr. Wood's. (Wood Supplemental Brief, R. 170, PageID.6801). The name is spelled correctly, but the block does not contain an email address, also called for by the local rules of electronic filing. The trial court never determined who placed his name on the pleadings. No positive proof was established in the lower court from which to conclude he had authorized anyone to sign for him.

None of the attorneys for the defendants or intervenors ever communicated with Mr. Wood during the pendency of the litigation below, other than the one communication with the notice of the Rule 11 sanctions motion. Because he had not filed an appearance, he received no electronic notice of service of the filings of any of the parties in the litigation. No evidence to the contrary was presented below.

The attorneys that signed the complaint, the amended complaint, and the motion for the injunction were Sidney Powell, Gregory Rohl, and Scott Hagerstrom. (Complaint, R. 1, PageID.75; First Amended Complaint, R. 6, PageID.957, Motion for Injunction, R. 7, PageID.1847-1848). The two complaints and the motion for an injunction were filed by Gregory Rohl. (See trial court docket entries for R. 1, 6, 7).

Additionally, Howard Kleinhelder has told the court he and Sidney Powell were the principal drafters of the complaint. (Transcript, R. 157, PageID.5322). Mr. Wood participated in no hearings, court conferences, or discovery of any nature. He did not advocate in the lower court.

As indicated above, Mr. Wood's name appears only on the last page of the complaint and amended complaint. It does not carry a signature line, only his name and an incorrect address. (Complaint, R. 1, PageID.75; Amended Complaint, R. 6, PageID.957). The next substantive filing by the Plaintiffs was the Motion for Injunctive Relief. The drafters did not put Mr. Wood's name on that document. (Emergency Motion for Injunctive Relief, R. 7, PageID.1832-49).

On December 22, 2020, the City of Detroit filed its Motion to Dismiss and for Sanctions. (Motion to Dismiss, R. 73). Sanctions were sought only under 28 U.S.C. §1927. (Id,, PageID.3576-3578). That motion did not identify any of the attorneys by name against whom sanctions were sought. It included only four paragraphs on sanctions. (Id.)

On January 5, 2021, the City of Detroit filed its Motion for Sanctions, for Disciplinary Action, for Disbarment Referral and for Referral to State Bar Disciplinary Bodies. (Motion for Sanctions, R. 78). It relied only on Rule 11 and identified eight attorneys against whom sanctions were sought, including Mr. Wood. (Id., PageID.3668-3669). The trial court later held that this motion mooted the City

of Detroit's December 22, 2021, motion for sanctions and dismissed the former for that reason.   (Opinion and Order, R. 149, PageID.5266).

Intervenor Robert Davis moved for sanctions on December 22, 2020, on the basis of the court's inherent authority and 28 U.S.C. § 1927.  (Motion for Sanctions, R. 69).  The sanctions were sought as to "Plaintiffs' attorneys" without identifying any by name.  Compared to the City of Detroit and State Defendants in the sanctions' proceedings, Robert Davis' role was minimal and described by the trial court as doing "more to interfere with than assist," "clogg[ing] the Court's docket," and "add[ing] little to the discussion."  (Opinion, R. 172, PageID.6994).

The State Defendants filed their motion for sanctions under 28 U.S.C. § 1927 and the court's inherent authority on January 28, 2021.  (R. 105).  It limited its request for sanctions to four attorneys, which did not include Mr. Wood:

> Plaintiffs' counsel, Michigan attorneys Greg Rohl (P39185), Richard Scott Hagerstrom (P57885), and Stefanie Lambert Junttila (P71303), and Texas attorney Sydney Powell (Texas Bar No. 16209700), should be sanctioned under 28 U.S.C. §1927, and an award of attorneys' fees be entered in this matter. Alternatively, or in addition to § 1927, this Court should impose sanctions and award fees pursuant to its inherent authority.
> (Motion for Sanctions, R. 105, PageID.4358).

In a supplemental brief to that motion, the State Defendants again acknowledged that, except for the four identified in this excerpt, they "did not specifically seek sanctions against the other counsel" for the Plaintiffs, which would

include Mr. Wood, had they considered him counsel for the Plaintiffs. (Supplemental Brief, R. 166, PageID.6589, n. 1).

In June 2021, the trial court scheduled a hearing for July 2021 on the motions for sanctions and required the attendance of any attorney whose name appeared on any pleadings or briefs for the Plaintiffs. (Order, R. 123, PageID.5134). On July 12, 2021, the trial court held a hearing on Zoom on the motions for sanctions. The hearing lasted almost six hours. (Opinion, R. 172, PageID.6902). It was live streamed on YouTube, where thousands of people viewed the hearing.

On August 25, 2021, the trial court issued its Opinion and Order imposing sanctions against all nine attorneys whose name appeared on any filing for the Plaintiffs on the basis of Rule 11, 28 U.S.C. §1927, and its inherent authority. (Opinion and Order, R. 172, PageID.6998-9; Judgment, R. 180, PageID.7170). In substance, the trial court found that the filing of the complaint and the amended complaint, and the failure of the Plaintiffs to dismiss them after the electoral ballots were cast on December 14 and after trial court denied the injunction motion on December 7, constituted sanctionable conduct. (Opinion, R. 172, PageID.6992). The trial court relied on Rule 11 and its inherent authority for its sanctions as to the filing of the complaint and the amended complaint. (Id., PageID.6942-6991). It relied on § 1927 for the failure of the Plaintiffs to dismiss those claims soon after December 14 and before January 14, 2021. (Id., PageID.6938-6941). The sanctions

10

were the same as to all nine attorneys who the lower court concluded represented the Plaintiffs, which was all attorneys: joint and several liability for the fees and costs of the State Defendants and the City of Detroit, 12 hours of continuing legal education, and a referral to all state bars and federal courts to which the nine attorneys were admitted for investigation and possible suspension or disbarment. (Id., PageID.6996-6997).

After the August 25, 2021, ruling, the City of Detroit and State Defendants submitted attorney fee detail. (State Notice, R. 173; Detroit Time and Expense Records, R. 174). The State sought $21,965 for two attorneys. (Opinion and Order dated December 2, 2021, R. 179, PageID.7143). The City requested $182,192 for the work of seven attorneys. (Id., PageID.7143-7144). The trial court entered Judgment on December 2, 2021, ordering that "Plaintiffs' counsel, jointly and severally, shall pay attorney fees in the amount of $21,964.75 to Defendants Gretchen Whitmer and Jocelyn Benson" and $153,285.62 to the City of Detroit. (Judgment, R. 180, PageID.7169-7170). The only reduction of any significance was the elimination of $26,077 in fees claimed by the City of Detroit for the Plaintiffs' appeal of the denial of the injunction motion. (Opinion, R. 179, PageID.7147).

11

# SUMMARY OF THE ARGUMENTS

The district court sanctioned Mr. Wood when he did nothing that would amount to a violation of the dictates of Rule 11 of the Federal Rules of Civil Procedure. He did not present to the lower court a pleading, motion, or any other paper to the lower court as part of the litigation in this case. He did not commit any of the above acts because he did not sign, file, submit or advocate the position of any pleading or motion submitted to the lower court. Simply because his name appeared on the complaint and the amended complaint, the lower court imposed the most severe sanction available to it, with the clear purpose of depriving Mr. Wood a livelihood from the profession he has enjoyed for the past 45 years.

The lower court was presented with no evidence to suggest that Mr. Wood drafted the offensive pleadings, that he proffered any advice to the drafters prior to their filing the complaint or that he any supervisory position over the attorneys who did draft the pleadings. No evidence existed to establish any fact from which the district court could justify sanctioning Mr. Wood, and the lower court, therefore, abused its discretion in ordering the extraordinary sanctions it imposed.

Rule 11(b) is specific in delineating what actions an attorney must take in order to violate the rule. "By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge,

12

information, and belief, formed after an inquiry reasonable under the circumstances:
(1) it is not being presented for any improper purpose…(2) the claims…are
warranted by existing law…, and (3) the factual contentions have evidentiary
support….” Fed. R. Civ. P. 11(b).  Rule 11(c) states, “If…the court determines that
Rule 11(b) has been violated, the court may impose an appropriate sanction on any
attorney…that violated the rule or is responsible for the violation.”  Fed. R. Civ. P.
11(c).  Mr. Wood, according to the evidence presented below, presented no pleading
or motion to the lower court, and, therefore, did not violate the rule.  Neither was he
“responsible” for the violation.  The trial court abused its discretion in concluding
otherwise.

The trial court also imposed sanctions against Mr. Wood pursuant to 28 U.S.C.
§ 1927, concluding that the “Plaintiffs’ counsel” had vexatiously multiplied the
proceedings “by failing to dismiss the case when their claims became moot on
December 14 (if not earlier) and by pursuing their legal claims even after the Court
issued its opinion clearly informing Plaintiffs and their counsel that their legal claims
were weak and lacked factual support.” (Opinion and Order, R. 172, PageID.6938-
6939).  However, the State Defendants were the only parties, in the end, who pursued
sanctions pursuant to 18 U.S.C. § 1927.  The lower court dismissed the City’s § 1927
sanctions motion as moot on July 9, 2021. (Order, R. 149, PageID.5266).  The lower
court concluded that Intervenor Davis’ role in seeking sanctions was minimal and

described by the trial court as doing "more to interfere with than assist," "clogg[ing] the Court's docket," and "add[ing] little to the discussion." (Opinion, R. 172, PageID.6994). What the lower court failed to recognize is that the State Defendants did not seek sanctions against Mr. Wood. The lower court's opinion and order imposing sanctions against Mr. Wood for violating 18 U.S.C. § 1927 was an abuse of discretion.

Lastly, it was error for the trial court to award sanctions under its inherent authority for the filing of the complaint and the amended complaint. In regard to sanctions imposed for the filing of pleadings, Rule 11 should be considered the exclusive authority to assess those sanctions. Though they may not be absolutely precluded by Rule 11, Mr. Wood did nothing which could be construed as constituting the requisite misconduct or bad faith to justifying sanctions under a court's inherent authority.

The trial court was required to scrutinize the conduct of each attorney and assess sanctions specifically on that basis. It did not do so, instead treating all as a group and then sanctioning all nine attorneys for whatever any other attorney in the group did or did not do. The amount and nature of the sanctions were excessive. Mr. Wood had no role in drafting the two complaints, did not sign or file them, and could not have dismissed them even if he was asked to do so. His conduct could

never justify the sanctions of $175,250 and state bar referrals for possible disbarment.

In every respect, as to Mr. Wood, the trial court abused its discretion, and this Honorable Court should reverse the lower court's order to the contrary.

<u>ARGUMENT</u>

I.    **The district court erred when it imposed monetary and non-monetary sanctions against Mr. Wood where no evidence was presented in the trial court to establish Mr. Wood signed, filed, submitted, or advocated any pleading, motion or other paper presented to the district court in violation of Federal Rule of Civil Procedure 11(b).**

A.    **Standard of Review**

"[A]n appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S. Ct. 2447, 2461, 110 L. Ed. 2d 359 (1990). However, "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* The same standard applies to orders for sanctions pursuant to 18 U.S.C. § 1927 and the court's inherent authority.

B.    **The Defendants Produced No Evidence in the Lower Court from which to Conclude Mr. Wood "Presented" a Pleading or Motion to the Court.**

15

Rule 11(b) states as follows:

> **(b) Representations to the Court**. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies….
> Fed. R. Civ. P. 11(b)

The plain language of the rule dictates the responsibility a presenter undertakes when signing, filing, submitting, or later advocating a pleading, motion, or other paper.  Clearly, a presenter must have knowledge of what the document he or she is filing contains in order to suffer the consequences of failing to follow the dictates of the balance of the rule, which states what is the presenter certifies:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> Fed. R. Civ. P. 11

Though Rule 11 has been amended since, the Supreme Court's guidance for interpreting the rule has not.  "We give the Federal Rules of Civil Procedure their plain meaning, and generally with them as with a statute, when we find the terms ... unambiguous, judicial inquiry is complete." *Pavelic & LeFlore v. Marvel Ent. Grp*., 493 U.S. 120, 123, 110 S. Ct. 456, 458, 107 L. Ed. 2d 438 (1989) (Internal citations

16

and quotations omitted).  As stated in the rule, a presenter is one who signs, files, submits or later advocates for a pleading, motion, or other paper.  No other act is sanctionable pursuant to the rule.  As Justice Scalia stated in *Pavelic*, judicial interpretation is complete where the terms of the rule are unambiguous.  Had the Supreme Court wished to sanction individuals who commit other acts, it would have done so.  It did not and, therefore, the "maxim expressio unius est exclusio alterius ("the expression of one thing is the exclusion of others") that justifies the inference that activities not mentioned were excluded by deliberate choice, not inadvertence...." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 283 (6th Cir. 2010) (Internal citations and quotations omitted).

The lower court found no fact to establish Mr. Wood did any of the acts that could subject him to sanctions.

The record below is clear that Mr. Wood did not having anything to do with the drafting of the complaint.  The record is replete with the true facts – Howard Kleinhelder drafted the complaint, met with the affiants/experts mentioned in the complaint and was clearly the most knowledgeable of the arguments made therein (Transcript, R. 157, PageID.5322-24, 5341, 5347, 5355, 5373-4).  Sidney Powell told the lower court that she took full responsibility for its contents.  (Transcript, R. 157, PageID.5533).  The trial court had no facts from which to conclude that Mr. Wood drafted the complaint.

17

## C.    Mr. Wood Did Not File the Complaint

He clearly did not file it.  The filing attorney was Gregory Rohl.  Rohl submitted an affidavit admitting that he filed the complaint after reading it on the evening of November 25, 2020.  (Rohl Affidavit, R. 111-1, PageID.4597-9).  The lower court put some additional stock in the Rohl affidavit, however, using it to somehow attribute responsibility to Mr. Wood for "spearheading" the lawsuit. Nothing could be further from the truth, but, nonetheless, the statement the lower court attempted to hang its hat on was hearsay.

The City claimed in one of its supplemental briefs filed in the lower court, that Gregory Rohl swore "he was asked to assist in 'litigation involving alleged election fraud in Michigan which was being spearheaded by Sidney Powell and Lin Wood.'"  (City's Lower Court Brief, R. 164, PageID 6148).  That claim was misleading.  The City failed to point out that the statement is not from Mr. Rohl but is inadmissible hearsay.  The entirety of the statement in the affidavit is: "That on that date at approximately 6:30 PM, Rohl was contacted by an associate who asked Rohl if he would assist in litigation involving alleged election fraud in Michigan which was being spearheaded by Sidney Powell and Lin Wood."  (Rohl Affidavit, R. 111-1, PageID.4597).  The Defendants presented no evidence Mr. Wood ever met Rohl.  The Defendants presented no evidence Mr. Wood had ever spoken with Rohl

on the telephone.  Rohl apparently was told the litigation was being spearheaded by Powell and Mr. Wood, though that was untrue.

Fed. R. Evid. 802(c) defines "hearsay:" "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  The City attempted to prove the truth of the matter asserted – that Mr. Wood spearheaded this litigation – by using a statement attributable to no named person, a person who said it to Mr. Rohl.  Clearly, the reason the City had failed to set forth the whole statement in its brief was because of that fatal flaw, and the City was well-aware of the truism that hearsay affidavits are to be given no weight.

Even when deciding motions for summary judgment, a relatively lower bar than deciding whether to sanction an attorney, Court's are to give affidavits containing hearsay no weight.  See *Pan–Islamic Trade Corp. v. Exxon Corp*., 632 F.2d 539, 556 (5th Cir.1980) ("It is well established that hearsay evidence in such affidavits is entitled to no weight."); *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir.1980) (hearsay evidence "is inadmissible and may not be considered by this court on review of a summary judgment"); *State Mut. Life Assurance Co. of Am. v. Deer Creek Park*, 612 F.2d 259, 264–65 (6th Cir.1979) ("Affidavits composed of hearsay and opinion evidence do not satisfy Rule 56(e) and must be disregarded."); *Rossi v. Trans World Airlines, Inc.*, 507 F.2d 404, 406

(9th Cir.1974) (same). *Turoff v. May Co.*, 531 F.2d 1357, 1362 (6th Cir. 1976) ("The Glazer affidavit states that the cashiers told him…that May denied stamps for late payment. Glazer's affidavit is pure hearsay and entitled to no weight.") Even though it was apparent the Rohl affidavit should have been given no weight on that point, because it contained pure hearsay, the lower court utilized it in its opinion and order.

When the lower court was attempting to demonstrate Mr. Wood's supposed connection to the complaint, it said in a footnote, "Though the Court hesitates to rely too much on the assertions of any of Plaintiffs' attorneys…. the Court notes that Rohl's sworn affidavit was attached to a supplemental brief filed by Plaintiffs' counsel in response to the City's motion for sanctions. ([Juntila's Response to Defendants' Motion, R.] 111 at PageID 4556, 4559, 4561-62.) No member of Plaintiffs' legal team objected to any part of Rohl's affidavit." The final statement of the lower court is simply not true. Mr. Wood objected to the affidavit as being untrue and unreliable hearsay, utilizing the same arguments set forth above. (Wood Supplemental Response, R. 170, PageID.6797-9). The lower court relied on a fact that was not true, that was unreliable and then falsely stated Mr. Wood did not object to it. The lower court's conclusion was clearly erroneous.

**D.    Mr. Wood Did Not Sign the Complaint**

Neither did Mr. Wood sign the complaint or amended complaint. Had he done so, it would have been in the proper form, it would have contained his email address

20

and it would have contained his correct address. The defendant's did not prove in the lower court who put Mr. Wood's name on the pleadings, but certainly no evidence existed to believe Mr. Wood had signed it or had it done at his direction.

The Eastern District of Michigan instituted Electronic Filing Policies and Procedures beginning with the mandatory electronic maintenance of court files as of June 1, 2004. The Court approved mandatory electronic filing on November 30, 2005. Rule 10 of the policies and procedures dictates the manner in which documents are to be electronically signed. It states:

R10 Signatures
(a) See Fed. R. Civ. P. 5(d)(3)(C).
(b) A paper filed electronically must include a signature block containing the name of the filing user represented by "s/", "/s/" or a scanned signature, firm name (if applicable), street address, telephone number, primary e-mail address, and bar ID number (where applicable). The format of the signature block should substantially conform to the following sample:

SAMPLE:   s/John Doe
          Doe Law Firm
          123 Main Street
          Detroit, MI 48200
          (313) 555-1234
          jdoe@doelaw.com
          P12345
E. D. Mich. LR, App'x ECF, R10.  (Emphasis supplied.)

Rule 5(d)(3) of the Federal Rules of Civil Procedure also addresses the requirement that electronically filed documents must be signed.   Subrule (C) designates what a signed filing consists of.  "A filing made through a person's

electronic filing account *and authorized by that person*, together with that person's name on a signature block, constitutes the person's signature."  Fed. R. Civ. P. 5(d)(3)(C) (Emphasis supplied).  Furthermore, "No filing user may submit a paper with an electronic signature unless the filing user has permission of the signatory." E. D. Mich. LR, App'x ECF, R10(f).  The defendants in the lower court provided no evidence anyone had Mr. Wood's permission.

Though Mr. Wood's name "appeared" on the initial complaint and the amended complaint (Complaint, R. 1, PageID.75 and Amended Complaint, R. 6, PageID.957, respectively), the Defendants offered no evidence he did place his name there, nor did the Defendant's show he authorized any of the other attorneys to use his name.  The signature pages of the complaint and amended complaint were electronically signed by Sidney Powell, Scott Hagerstrom and Gregory Rohl.  They were in compliance with ECF Policies and R10 noted above.  An electronic signature must be designated by the notation, prior to the attorney's name and on the signature line, "/s/."  *Id*.  Mr. Wood's was not.  It was not, because Mr. Wood did not sign the pleadings.  His name and an incorrect address[2] were listed, but the documents did

---

[2] The discrepancy with the addresses was pointed out to the lower court in briefing regarding the serving of hard copies of the Rule 11 motions.  "The address the City used is not Mr. Wood's address. P.O. Box 52584 in Atlanta, Georgia, is a postal box used by Mr. Wood for his business mail, but the zip code used by the City was wrong.  The zip code the City used was 30305-0584. The correct zip code for Mr. Wood's post office box is 30355."  (Wood Supplemental Brief, R. 170, PageID.6801).

not even carry the customary signature line above Mr. Wood's name. Finally, the pleadings did not carry Mr. Wood's email address which is a requirement when filing any pleading in the lower court. Mr. Wood argued in the lower court, with the utmost respect, that court did not have the authority to impose discipline on him when he was not before the court in any capacity. The lower court, however, appeared to place the blame on Mr. Wood for the sloppy insertion of his "signature," rather than use it for what it was – evidence that he did *not* sign his name or authorize someone else to do it for him. He would have entered his correct address and in the correct form.

Despite the clear requirements of Rule 11(b) that an individual present a pleading, motion or other paper to the court by signing, filing, submitting or later advocating the document, the lower court concluded Mr. Wood should suffer the harshest of sanctions.

### E.    The Lower Court Found No Evidence Mr. Wood Had Presented any Pleading

The lower court utilized five pages of its opinion and order to establish, apparently, that Mr. Wood knew a lawsuit had been filed in Michigan and he knew the City of Detroit was seeking sanctions against him. (Opinion and Order, R. 172, PageID.6917-23). Millions of people knew of the lawsuit. Millions of people supported the filing of the lawsuit. Mr. Wood, though an ardent supporter of the

former president, did not author or file this lawsuit.  Nonetheless, the lower court then concluded:

> For these reasons, while Wood now seeks to distance himself from this litigation to avoid sanctions, the Court concludes that he was aware of this lawsuit when it was filed, was aware that he was identified as co-counsel for Plaintiffs, and as a result, *shares the responsibility* with the other lawyers for any sanctionable conduct.
> (Opinion and Order, R. 172, PageID.6923) (Emphasis supplied).

Being aware of the lawsuit, as stated above is no grounds for imposing sanctions on a lawyer.  Even being aware that one may be identified as co-counsel for the Plaintiffs is not sanctionable conduct pursuant to the dictates of Rule 11.  The Defendants presented no proof Mr. Wood signed, submitted, filed, or later argued any document in the lower court.  The court then leaps to the conclusion that Mr. Wood, therefore, "shares the responsibility with the other lawyers for any sanctionable conduct."  The lower court erred as a matter of law in its broad conclusion.

### F.    Mr. Wood Was Not Responsible for the Pleadings

However, Courts have held that attorneys who do not sign a pleading and do not themselves file the pleading or motion, may still be liable for sanctions if they are responsible for the filing.

Rule 11(c) discusses who may be sanctioned.  The rule states:

**(c) Sanctions**.

(1) *In General*. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.
Fed. R. Civ. P. 11

According to the Advisory Committee Notes, determining whether an attorney is "responsible for the violation" is a question of causation between the non-presenting attorney and the violation: "[t]he revision permits the court to consider whether other attorneys in the firm, co-counsel, other law firms, or that party itself should be held accountable for their part in causing a violation."  (Notes of Advisory Committee on Rule 11 - 1993 Amendment).   Advisory Committee Notes are frequently used to interpret the Federal Rules of Civil Procedure and other court rules.  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615, 117 S. Ct. 2231, 2245, 138 L. Ed. 2d 689 (1997) ("Framed for situations in which 'class-action treatment is not as clearly called for' as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit 'may nevertheless be convenient and desirable.' Adv. Comm. Notes, 28 U.S.C.App., p. 697.); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833-835, 119 S. Ct. 2295, 2308-2310, 144 L. Ed. 2d 715 (1999) (Adv. Comm. Notes citations).  *Zaldivar v City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986) (use of Adv. Comm. Notes to interpret Rule 11).

The lower court sanctioned Mr. Wood because, under the "responsible" clause of Rule 11(c), his name appeared on the two complaints, and he knew he had been included.

The lower court held:

> For purposes of Rule 11, an attorney who is knowingly listed as counsel on a pleading, written motion, or other paper "expressly authorize[d] the signing, filing, submitting or later advocating of the offending paper" and "shares responsibility with the signer, filer, submitter, or advocate."14 *Morris v. Wachovia Sec., Inc*., No. 3:02cv797, 2007 WL 2126344, at *9 (E.D. Va. 2007) (emphasis removed) (quoting Gregory P. Joseph, Sanctions the Fed. Law of Litig. Abuse, 5(E)(1) at 110 (3d ed. 2000)). "The Court need not go through 'mental gymnastics,' as pre-1993 courts sometimes felt compelled to do, see Sanctions, 5(E)(1) at 109, in order [to] hold [the attorney] to account under Rule 11." Id.
>
> Notably, because Rule 11 only requires a signature by "at least one attorney," Fed. R. Civ. P. 11(a), documents are frequently presented to federal courts which list several attorneys as counsel but contain the signature of only one. Regardless, as amended in 1993, Rule 11 allows for sanctions "on any attorney . . . that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1) (emphasis added). Moreover, Michigan Rule of Professional Conduct 8.5(a) reads: "A lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction." (emphasis added).
>
> By agreeing to place their names on pleadings and/or motions, counsel are responsible for those submissions and will be held accountable.

No legal authority exists for the proposition that any attorney whose name appears on pleadings, whether they knew of their content or not, are liable for sanctions.  Such a conclusion is untenable and clearly not authorized by Rule 11. The lower court cited to one case to support the erroneous conclusion, a trial court

opinion from the Eastern District of Virginia, *Morris v. Wachovia Sec., Inc.*, No. CIV.A. 3:02CV797, 2007 WL 2126344 (E.D. Va. July 20, 2007). However, a simple reading of the case establishes that this lower court's conclusion is wrong.

In *Wachovia*, sanctions were sought against attorney Schulman. He had been "appointed as lead counsel" by the court (*Id*. at *1), was at "the helm" on the plaintiffs' side (*Id*. at *11) and had the role of "general supervising senior partner" charged with the duties of "overall strategic responsibilities" (*Id*. at *2). Starting with an amended complaint filed three months after the start of the case and continuing with "subsequent pleadings and briefs," Schulman was "listed in typeface as counsel of record" on pleadings and briefs. *Id*. at *3.

The court in *Wachovia* first found that Schulman could not be found liable for "presenting" under Rule 11(b) because Schulman "did not personally file or submit papers" (*Id*. at *7) and "never signed any of the papers, or appeared before the Court during the litigation" (*Id*. at *7). This finding was made despite Schulman's name being listed as counsel of record on the objectionable pleadings.

The Court in Wachovia concluded, "Thus, Rule 11(b) places liability only on a lawyer who 'signs,' 'files,' or 'submits' a pleading or who later 'advocates' its content, not on anyone else. Wachovia does not contend that Schulman signed, filed, or submitted an offending paper or later argued its contents. Thus, Schulman is not sanctionable under Rule 11(b)." *Id*. at *9. The court then turned to Rule 11(c) to

determine whether Schulman could be sanctioned because he was "responsible" for the Rule 11(b) violations.

Opposing counsel had made Schulman aware in a Rule 11 letter that one of the Plaintiff's claims dealing with the "stock loan" allegation was false. Nonetheless, under Schulman's oversight, the Plaintiffs filed a brief in opposition to the Defendant's dismissal of the stock loan claim. *Morris v. Wachovia Sec., Inc., supra*, at *12. The court concluded:

> It is the responsibility of lead counsel in a case who holds the responsibility for overall strategic decisions and overall management of the case, as did Schulman, to assure himself that the basic legal theories upon which a case is to proceed are grounded in fact and law. Here, the record shows that Schulman took no action to that end after having been informed by the Rule 11 letter that the "stock loan" claim was false. Schulman's responsibility was to ferret out and identify the basis of the "stock loan" claim, to review the factual predicate for the claim against the applicable law, and to make the decision whether that claim should be pressed at all. The record does not reflect that Schulman took any such action.
> *Id.* at 12.

Therefore, for his violation, the trial court admonished Schulman. It should be noted that the Wachovia matter was before that court on remand from the Fourth Circuit Court of Appeals, which remanded the case to the trial court with instruction to "admonish" the lawyers it found responsible for violations of Rule 11.

It should also be noted that the court in Wachovia had conducted an evidentiary hearing on December 11, 2006, in order to ferret out the facts and timing

28

of the lawyers' efforts and responsibilities in managing the litigation. Obviously, the trial court here refused to undertake such a hearing.

Clearly, the lower court's reliance on the case it chose to cite to the parties was misplaced. The lower court had no authority to impose sanctions on Mr. Wood without first determining whether he had any supervisory responsibility for the litigation before deciding to lump together all attorneys whose names appeared on pleadings no matter their involvement in filing or submitting or later advocating in the lower court. This Honorable Court should reverse the lower court's sanctions order.

As with a number of other lawyers who fell under the umbrella of the lower court's sanctions, the Defendants below could point to no fact in support of a conclusion that Mr. Wood filed, signed, submitted or later advocated for any pleading. Instead, the City simply continued in its briefs to rely upon one ad hominem attack after another against Mr. Wood, violating the civility principles of the Eastern District of Michigan.[3] The City referred to Mr. Wood as a "bully" (City's Supplemental Brief, R. 164, PageID.6151), called him "cowardly" (*Id*.), said he was

---

[3] "We will treat all other counsel, parties and witnesses in a civil and courteous manner, not only in court, but also in all other written and oral communications." E.D. Admin. Order 08-AO-009, *Attorneys' Responsibilities to Other Counsel*, ¶ 1 (January 23, 2008).

"unhinged" (City's Supplemental Brief, R. 164, PageID.6152) and called all of the lawyers "detached." (Id.). The personal attacks, unfortunately, only served to inflame the reader rather than arguing the facts presented in the lower court – none of which prove that Mr. Wood authored or otherwise legally advocated before the lower court in the litigation. He did not, and the court erred in sanctioning him as if he did. This Honorable Court should reverse the lower court's opinion as it related to Mr. Wood.

**II.    The district court erred in when it imposed monetary and non-monetary sanctions against Mr. Wood pursuant to 28 U.S.C. § 1927 where the state defendants did not request sanctions against Mr. Wood.**

The trial court imposed sanctions under 18 U.S.C. § 1927 because Plaintiffs' counsel failed to dismiss earlier than January 14, 2021:

> This argument misses the crux of opposing counsel's argument for §1927 sanctions, which is that Plaintiffs' counsel multiplied proceedings by failing to dismiss the case when their claims became moot on December 14 (if not earlier) and by pursuing their legal claims even after the Court issued its opinion [on December 7] clearly informing Plaintiffs and their counsel that their legal claims were weak and lacked factual support.
> (Opinion, R. 172, PageID.6938-39).

The significance of the December 14, 2020, date is that was when "Michigan's electors cast their votes on December 14." (*Id.*, PageID.6936-37). At the July 12 hearing, the trial court asked why the matter was not dismissed after December 14, 2020. (Transcript, R. 157, PageID.5345). In response, counsel for Howard

Kleinhendler and Sidney Powell informed the Court that those two attorneys decided against dismissal based on issues that they believed remain to be litigated and that "Lin Wood didn't have any role" in that decision. (*Id.*, PageID.5347).

The trial court sanctioned Mr. Wood under §1927 for the same reason he was sanctioned under Rule 11, which was that his name appeared as "of counsel" on the complaint filed on November 25 and amended complaint filed on November 29:

> Although the issue of whether non-signing attorneys can be sanctioned is discussed in this Rule 11 section, the Court concludes for the same reasons that they can be sanctioned under §1927 and the Court's inherent authority, as well. The same is true for Wood, Newman, and Rohl, who are discussed in the next subsections.
> (Opinion, R. 172, PageID.6917, n. 15).

The trial court's discussion "in the next subsections" was the erroneous conclusion that Mr. Wood "was aware of this lawsuit when it was filed, was aware that he was identified as co-counsel for Plaintiffs, and as a result, shares the responsibility with the other lawyers for any sanctionable conduct." (*Id.*, PageID.6923).

Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct
> 28 U.S.C. §1927.

"There must be some conduct on the part of the subject attorney that trial judges, applying collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court." *Salkil v. Mount Sterling Twp. Police Dep't,* 458 F.3d 520, 532 (6th Cir. 2006) (quoting *Ridder v City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997)).  To be sanctionable, the subject conduct must "cause[s] additional expense to the opposing party."  *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater,* 465 F.3d 642, 646 (6th Cir. 2006).  Such sanctions are intended to "deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy."  *Id.* at 646.

The only finding made by the trial court as to the involvement of Mr. Wood was that cited above - his name appeared on the complaint and amended complaint and he knew he was listed as co-counsel.  He did not.  (Opinion, R. 172, PageID.6923).  The sanctions under §1927, however, were based on pursuing the claims after December 7 and failing to dismiss after December 14.  But Mr. Wood's activity, according to the lower court occurred on November 25 and 29, 2020.  No Defendant or Intervenor, communicated with Mr. Wood at any point to seek his consent to such a dismissal.  Had they done so or had Mr. Wood wanted to do so on his own, he could not have dismissed the complaint.  He had not even filed an appearance, he had not filed or signed any filings, and was not admitted to the Eastern District of Michigan bar.  The State Defendants apparently reached that

32

conclusion because they never sought sanctions against Mr. Wood on this or any other ground.  Sanctioning Mr. Wood in the complete absence of any facts or even logical theory to hold him responsible for anything after December 7 or 14, 2020, was an abuse of discretion.

**III.    The district court erred in imposing sanctions against Mr. Wood pursuant to its inherent authority when Federal Rule of Civil Procedure 11 should be treated as the exclusive remedy for sanctions for any violative pleadings.**

In its August 25, 2021, Opinion, the lower court sanctioned all nine attorneys based on its inherent authority for the filing of the complaint and amended Complaint.  (Opinion, 172, PageID.6990-6991).  As to Mr. Wood, just as was the case with sanctions under §1927, the lower court continued to rely on the appearance of his name on the complaint and amended complaint to impose sanctions. (Opinion, R. 172, PageID6923).  Rule 11 specifically applies to the propriety of pleadings and other submissions filed with the Court.  In *Chambers v. NASCO, Inc*., 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991), the Supreme Court cautioned against awarding sanctions under the court's inherent authority if the matter can be addressed under the Federal Rules of Civil Procedure:

> Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power. *Id*. at 50.

33

In *United States v Aleo*, 681 F.3d 290 (6th Cir. 2012), Judge Sutton of this Court addressed this very issue of whether a court could use its inherent authority where statutory or rule authority already existed as to the conduct at issue. That case involved whether a federal court could sanction a lawyer in a criminal proceeding under its inherent authority. In the course of that discussion, in a concurring opinion, Judge Sutton addressed the use of inherent powers where Rule 11 applies in a civil case:

> Had this been a civil case, it would have been an easy case. A court's use of inherent power to sanction the filing of Mr. Freeman's (allegedly) frivolous motion could not be reconciled with the sanctioning regime already in place under the Federal Rules of Civil Procedure. In a civil case, a district court faced with sharp elbowed litigation tactics may, indeed must, sanction attorney misconduct under Civil Rule 11. . . The Rule spells out the procedural prerequisites for imposing a sanction ("notice and a reasonable opportunity to respond"), who may seek sanctions (opposing parties and the court), the types of sanctions available (monetary and nonmonetary) and the purpose and limits of a sanction ("limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated"). Fed. R. Civ. P. 11(c).
>
>                         \* \*\*
>
> In the face of these carefully delineated regulations, it would be one thing to invoke inherent sanctioning authority to fill a gap in the Civil Rules, such as conduct outside the court's jurisdiction. See *Chambers*, 501 U.S. at 36-37, 50-51, 111 S.Ct. 2123 (litigant and his attorney "attempt[ed] to perpetrate a fraud on the court" by undertaking a series of bad-faith transactions to thwart the judicial process before filing lawsuit). It would be quite another to invoke that power to ease the burden of satisfying existing Civil Rules — to punish practices

34

exempted by a Rule or that fall short of meeting a Rule's standard for sanctionable conduct. See *United States v. One 1987 BMW 325*, 985 F.2d 655, 661 (1st Cir. 1993); *cf. Carver v. Bunch,* 946 F.2d 451, 453 (6th Cir. 1991) (local court rules "cannot conflict with the Federal Rules of Civil Procedure, Acts of Congress, and rules of practice and procedure prescribed by the Supreme Court"). Accordingly, had this been a civil case, a district court could not have used its gap-filling inherent power to sanction Mr. Freeman. Any effort to sanction the lawyer would have to rise or fall based on the relevant rules and statutes already in place.

*Id.* at 307-308 (emphasis added).

Court after court has followed this logic and refused to impose sanctions under its inherent authority where the alleged misconduct is covered by Federal Rules including Rule 11. *Animal Welfare Inst. v. Feld Entm't, Inc.*, 944 F. Supp. 2d 1, 18 (D.D.C. 2013) ("The Supreme Court's analysis in *Chambers* 'leads to the conclusion that if statutory or rules-based sanctions powers are entirely adequate, they should be invoked, rather than the inherent power.'"); *Kenyon Int'l Emergency Servs. Inc. v. Malcolm*, No. 12-20306, 2013 U.S. App. LEXIS 9704 (5th Cir. 2013) (the "filing of an 'irrelevantly scurrilous e-mail,' even if sanctionable, was not 'beyond the reach of the Rules.' Rather, it was well within the scope of Rule 11(b)(1), pursuant to which a district court may sanction an attorney for presenting a document for "any improper purpose . . ." Rule 11, therefore, provides the only plausible basis for the sanctions."); *United States v. Rogers Cartage Co.*, 794 F.3d 854, 863 (7th Cir. 2015) ("when the court chooses to exercise its inherent power, it should explain 'why Rule

35

11 was inadequate to serve [its] purposes.'"); *Fidelity Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 752 (7th Cir. 2005) ("when a domain of judicial action is covered by an express rule, such as Rules 26 and 37 of the civil rules, the judge will rarely have need or justification for invoking his inherent power"); *Sentis Group, Inc. v. Shell Oil Co.*, 559 F.3d 888, 900 (8th Cir. 2009) ("courts first should turn to specific rules tailored for the situation at hand, such as Rule 37, to justify sanctions.  Then, as an alternative basis for support or in circumstances where specific rules are insufficient, i.e., when 'there [is] a need,' it may be appropriate to invoke their inherent authority"); *United States v. One 1987 BMW 325*, 985 F.2d 655, 661 (1st Cir. 1993) ("there are limits to a court's inherent powers, particularly in instances where the Civil Rules are on all fours.  When, as in this case, the Civil Rules limit the nature of the sanction that can be imposed, a court may not use its inherent powers to circumvent the Rules' specific provisions.").

The trial court's sanctioning of Mr. Wood under its inherent authority was for the filing of the complaint and amended complaint though he filed neither.  The propriety of filed pleadings, and whether an attorney can be sanctioned for them, is a matter addressed in detail by Rule 11.  Promulgated in 1937, and amended five times, Rule 11 provides for a comprehensive framework, with detailed procedural steps and substantive requirements, for imposing sanctions for filings with the court. That alone should control the extent to which sanctions are available for filed

pleadings for all of the reasons given by Judge Sutton in *Aleo* and in the case law cited above.

To warrant sanctions on this basis, the attorney must be found to have "willfully abuse[d] judicial processes or who otherwise act[ed] in bad faith." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006). See *Tucker v. Williams*, 682 F.3d 654, 662 (7th Cir. 2012) ("Without a finding that [defendant] acted in bad faith or engaged in misconduct, the district court sanctioned him, seemingly, in the interest of 'fairness.' This is precisely the sort of sanction that is outside the court's inherent power."). *Fuery v. City of Chicago*, 900 F.3d 450 (7th Cir. 2018) ("part of a court's consideration should be on the impact or effect that the conduct had on the course of the litigation"). The standard for sanctions under this authority is high: the "mere fact that an action is without merit does not amount to bad faith" and a "court must find *something more* than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *BDT Prods., Inc. v. Lexmark Intern, Inc.*, 602 F.3d 742, 753-754 (6th Cir. 2010) (emphasis in original).

Sanctions under the trial court's inherent authority were assessed based the assertion of the claims in this action in the complaint and amended complaint. (Opinion, R. 172, PageID.6991). But the record is clear that the Defendants presented no evidence Mr. Wood drafted either complaint, because he did not. Nor

37

did he sign or file either. All of this is likely why the State Defendants sought sanctions under the court's inherent authority as to four attorneys but not as to Mr. Wood. It was an abuse of discretion by the trial court to sanction Mr. Wood based on its inherent authority.

### A.    The Trial Court Abused its Discretion By Failing to Analyze Each Attorney Individually

As discussed above, the Defendant's failed to prove that Mr. Wood did any act that implicated Rule 11, 18 U.S.C. § 1927, or the court's inherent authority to sanction. But instead of considering Mr. Wood's role and what effect his conduct may have had, the trial court essentially treated all nine attorneys as one with each attorney seemingly responsible for the conduct of each of the other eight attorneys.

Each sanction authority relied upon by the trial court requires an individual analysis of the attorney's conduct and violation. Rule 11 provides that the award of attorney fees is limited to "the reasonable attorney's fees and other expenses directly resulting from the violation." For §1927, an attorney's liability is intended to be limited to "the excess costs attributed to his misconduct." *In re Ruben*, 825 F.2d 977, 983 (6th Cir. 1987). Sanctions under the trial court's inherent authority are "limited to the fees the innocent party incurred solely because of the misconduct...." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1184, 197 L. Ed. 2d 585 (2017).

38

In *In re Ruben*, 825 F.2d 977 (6th Cir. 1997), the district court sanctioned a number of attorneys under Rule 11, the court's inherent authority, and §1927. The Sixth Circuit reversed because the trial court erred in not focusing specifically on what each attorney did and its impact, remanding so that task could be done with "more exacting scrutiny." *Id.* at 990. "Careful analysis and discrete findings are required, no matter how exasperating the case." *Id.* at 991. The trial court erred in that case because it "did not analyze the impact upon defendants of discrete acts of claimed misconduct" and "the extent to which [attorney] Ruben's misfeasance, if any, caused defendants to incur additional expenses should be explored." *Id.* at 990.

The same scenario occurred in the lower court here. The district court repeatedly grouped the attorneys together and never analyzed their individual conduct and what that conduct caused, if anything.

The treatment of all attorneys as one began at the start of the July 12, 2021 when the trial court announced that any attorney who did not object to an answer by another attorney was deemed to agree with that answer. (Transcript, R. 157, PageID.5314, lines 22-25). The lower court did not give the attorneys any advance notice of this rule. No authority existed for the imposition of a rule that says, "If you don't disagree, you are deemed to agree." It was especially unworkable for nine individuals with plainly different levels of involvement and knowledge appearing remotely. The unworkable nature of this hearing was particularly apparent when

39

Mr. Wood repeatedly attempted to make the point that he had no involvement with the litigation and wanted the opportunity for his own evidentiary hearing to prove it. The unworkable nature of the hearing caused the lower court to repeatedly stop Mr. Wood from making his points and his request. (Transcript, R. 157, PageID.5531).

The grouping of all attorneys as one continued when the trial court simply assumed all attorneys were the focus of all the motions and overlooked the important fact that the only named Defendants had not sought sanctions against Mr. Wood. Had the trial court understood that the State Defendants did not ask to sanction Mr. Wood, it may have given consideration to why there was no such request, which almost certainly derived from the lack of sanctionable conduct by Mr. Wood.

In the August 25 Opinion, the trial court repeatedly characterized the positions, answers, and involvement of the "Plaintiffs' lawyers" or Plaintiffs' counsel." The factual record is clear that Mr. Wood did not do or say what the trial court was attributing to him when it referred to "Plaintiffs' attorneys" or "Plaintiffs' counsel."

If that is the case, the trial court plainly erred because there was no basis, factually or legally, to attributing a single one of those statements to Mr. Wood. If the trial court intended to refer to less than all nine attorneys and not Mr. Wood, the opinion is inherently vague because it is impossible to determine what attorney is the subject of the trial court's reference. This error is particularly problematic

40

because the Opinion was sent to the Georgia State Bar for "possible disbarment" and that entity will be unable to understand from those group references whether, and to what extent, they include Mr. Wood.

This approach of treating all nine attorneys as one group continued when the trial court connected statements made by the "Plaintiffs' lawyers" at the July 12, 2021, hearing to what happened at the Capitol on January 6:

> Plaintiffs' lawyers brazenly assert that they "would file the same complaints again." (*Id.* at PgID.5534). They make this assertion even after witnessing the events of January 6 and the dangers posed by narratives like the one counsel crafted here. An attorney who willingly continues to assert claims doomed to fail, and which have incited violence before, must be deemed to be acting with an improper motive. (Opinion, R. 172, PageID.6989-6990).

Mr. Wood never said anything about filing the same complaint again or anything remotely like it. Yet, the trial court attributed it to him as part of the group of "Plaintiffs' lawyers" and then linked that type of statement, which Mr. Wood never made, to no less than being a cause of the events of January 6.

The trial court took considerable issue with how "Plaintiffs' counsel pointed" to *United States v Throckmorton,* 98 U.S. 61 (1878) at the July 12 hearing. (Opinion, R. 172, PageID.6944-6946). The trial court believed that the case was inapplicable, but was particularly troubled by it being cited "on social media by those who question the results of the 2020 presidential election" and, to support that conclusion, quoted verbatim the City of Detroit's brief that described the online citing of this

case as the "rantings of conspiracy theorists" and fodder for "social media echo chambers" (*Id.*, PageID.6945-6946). In a lengthy footnote, the lower court then quoted Twitter posts mentioning *Throckmorton* by numerous Twitter accounts. (*Id.*, PageID.6945). All of this was a gross abuse of discretion because (1) Mr. Wood nor his attorneys have ever mentioned *Throckmorton* in the trial court, (2) another attorney's citation of it should have no bearing on him, and (3) what unknown Twitter accounts say about *Throckmorton* should not have been considered by the trial court or influenced its decision to sanction Mr. Wood.

The trial court's group characterization continued for conduct occurring after the July 12 hearing. On July 14, 2021, a motion was filed by other attorneys to release the video of the hearing. (R. 152). That request was viewed with suspicion by the trial court: it was "curious as to what narrative Plaintiffs' attorneys wished to present through the video's release." (Opinion, R. 172, PageID.6977). Although it is very open to debate whether a request to make public a video of a hearing that had already been live streamed on YouTube and seen by at least 12,000 viewers is evidence of bad faith, it is absolutely clear that Mr. Wood, who had told the lower court of his need for counsel separate from Mr. Campbell, was clearly in need of the video for a legitimate purpose – to assist his new counsel in a very short period of time to prepare to respond to the allegations.

The trial court failed to undertake an individual assessment of his role and whether sanctions were appropriate as to him, which constituted an abuse of discretion.

**B.    Any Relief in Favor of the State Defendants Against** Mr. Wood **Should be Reversed.**

The motion of the State Defendants did not request sanctions against Mr. Wood.  (Motion for Sanctions, R. 105, PageID.4348 and PageID.4358).  Yet, the trial court awarded the State Defendants sanctions against Mr. Wood.  Whether considered a factual error by being mistaken as to what that motion requested or an error of law for granting sanctions against Mr. Wood for the State when they were not requested, it was an abuse of discretion.  Therefore, the trial court should be reversed as to holding Mr. Wood liable for damages awarded to the State Defendants.

**IV.    The Trial Court Abused its Discretion in The Nature of Sanctions Assessed**

An attorney can only be sanctioned for what he caused.  See Rule 11(c)(4) (an award of attorney fees is limited to "the reasonable attorney's fees and other expenses directly resulting from the violation."); *In re Ruben*, 825 F.2d 977, 983 (6th Cir. 1987) (under 1927, an attorney's liability is limited to "the excess costs attributed to his misconduct"); *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct.

43

1178, 1186 (2017) (sanctions under the trial court's inherent authority "are limited to the fees the innocent party incurred solely because of the misconduct….").

The trial court sanctioned Mr. Wood for the filing of the complaint because his name appeared on it and for not dismissing the complaint, but never explained how Mr. Wood's actions caused either event or expense to any party. To start a lawsuit, a complaint must be drafted, signed, and filed. Mr. Wood did none of those things. No work or expense resulted from Mr. Wood's name being placed on the complaint. The trial court also never explained how Mr. Wood could have dismissed the case at any point in time given that he had not filed an appearance in the trial court and had no control over the lawsuit.

The lower court was required to impose a sanction that was proportional to the misconduct as stated in the language of Rule 11, which directs that the sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." *Jackson v. Law Firm of O'Hara*, *Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989) ("because deterrence, not compensation, is the principal goal of Rule 11, courts should impose the least severe sanction that is likely to deter"). Moreover, as with any sanction, the punishment must be proportional to the wrong. *Williams v. Adams*, 660 F.3d 263, 265–266 (7th Cir. 2011) ("Court-ordered punishments (as distinct from punishments specified in legislation) are required to be proportioned to the wrong.").

44

The trial court abused its discretion in directing that the opinion be referred to the Georgia State bar for investigation and disciplinary action against Mr. Wood including possible suspension or disbarment. The trial court never explained how or why that referral was necessary as to Mr. Wood, why lesser sanctions would not be more appropriate given the facts in the record, and what case law favored possible disbarment as a remedy. The coupling of a less involved role for an attorney and a more severe sanction would be difficult to imagine. A court is obliged to balance carefully the facts and competing interests in determining the type and severity of sanctions to be imposed. *INVST Fin. Group v. Chem-Nuclear Sys.*, 815 F.2d 391, 404 (6th Cir. 1987). The trial court did not do so.

A.    The Trial Court Abused its Discretion in The Amount of Attorney Fees Awarded to the City of Detroit

    1. The City of Detroit's Time Entries Are Unreasonable and Excessive When Compared with the State Defendants

Both the City and State Defendants undertook substantially the same work. They opposed the motion for preliminary injunction (R. 5 and R. 31), moved to dismiss (R. 73 and R. 70), filed motions for sanctions (R. 73 and R. 105), and appeared at the hearing on July 12, 2021.

On September 8, 2021, the State Defendants and the City submitted their time entries to quantify the fee award. (State Defendants' Notice, R. 173; City of Detroit

Time Records, R. 174).  A comparison of those hours was provided to the trial court. (Newman's Objections, R. 176, PageID.7115-7116, R. 176-2, PageID.7124).

Mr. Wood requested that the trial court consider the state's time in assessing the reasonableness of the time claim by the City's attorneys. (Response, R. 176, PageID.7115-7117).  The trial court refused to do so.  Its reasoning was that the city's hours should be considered independently and that the State's hours provide no evidence of reasonableness.  (Opinion, R. 179, PageID.7148).  This was in error because the State did the same work.  Some variance could be expected but not 12 times more hours.  To refuse to consider the time of the attorneys for the State Defendants as an indication of reasonableness was an abuse of discretion because it was reliable, accurate, performed by similar attorneys, and for the same work.

2.  The Hours Awarded to the City of Detroit Were Excessive

a. Preparation for July 12, 2021 Hearing

On June 8, 2021, the trial court issued its notice of hearing for the sanctions motions. (R. 122).  The hearing was held on July 12, 2021.  From the date of that notice, June 8, through the day before the hearing, July 11, the trial court awarded, 82.75 hours.  (Affidavit, R. 174-1 at PageID.7081-7089). The only substantive activity during that time consisted of preparing for the hearing.  In contrast, the State claimed 3.5 hours to prepare for the July 12 hearing.  (State's Submission, R. 173-2

at PageID7010).  The trial court awarded the City all of its 82.75 hours because it

believed that there was more work to do than to prepare for the hearing:

> The docket reflects, however, that there was more for the City's
> attorneys to do during this time period than prepare for the hearing.
> Specifically, two motions were filed and briefed to adjourn the hearing,
> several attorneys entered their appearances on behalf of Plaintiffs'
> counsel, the Michigan Senate Oversight Committee issued a 55-page
> report finding no evidence of widespread or systematic fraud in the
> election, a motion was filed and briefed regarding the Court taking
> judicial notice of that report, Plaintiffs' attorneys moved to not appear
> in person at the hearing, and the Court issued an opinion and order
> addressing eight motions.  (Opinion, R. 179, PageID.1759).

Unopposed motions to adjourn the hearing and a single request to appear by

counsel at that hearing required little or no time of the City, nor did it require more

than 10 minutes to review two appearances of counsel.  The trial court denied the

City's motion to consider the Michigan Senate Oversight Committee's June 21,

2021, as unnecessary so the City should be not awarded any time for filing a motion

seeking unnecessary action, especially when the motion and brief was three pages

of text.  (Motion, R. 121, PageID.5069, 5074-5075).  The city only claimed 2.5 hours

to review the four page "order addressing eight motions," which leaves 72 hours to

prepare for a non-evidentiary one day hearing done remotely.  The State's attorneys

needed 3.5 hours to prepare.  (Affidavit, R. 173-2, PageID.7010).  It was an abuse

of discretion for the trial court to award any of those 72 hours without examining

reasonableness or necessity.

b. Post-Hearing Supplemental Briefs

After the July 12 hearing, the City filed two supplemental briefs. (R. 164 and R. 171).  From the hearing until the first brief was filed, the City claimed 83.75 hours, and 32.75 hours for the second brief. (City's Time Submission, R. 174-1 at Page ID #7088-7096). The State, which only filed one supplemental brief on August 4, incurred 4 hours to draft and file its supplemental brief. (State's Time Submission, R. 173-2 at PageID.7010 and R. 173-3 at PageID.7016).  Attorney Emily Newman argued to the trial court that the City's claimed time was excessive and unreasonable and should have been in line with the time of the State's attorneys.

The trial court rejected Newman's argument for the following reasons:

> Nor does the Court find the 114.25 hours billed by the City from the date of the hearing to August 4 excessive.  Ms. Newman attributes all of these hours to the City's preparation of its supplemental briefs. Again, the docket reflects more activity after the hearing than that.  For example, Plaintiffs' attorney L. Lin Wood had posted a video from the hearing on social media in violation of the Court's local rules, leading to the filing of an emergency motion (ECF No. 151) and a show cause order issued by the Court (ECF No. 156). Plaintiffs' attorneys filed an emergency motion asking the Court to publicly release the video. (ECF No. 152.) Moreover, Plaintiffs' attorneys raised many arguments for the first time at the July 12 hearing in response to the motions for sanctions, many of which related to the City's Rule 11 motion, not the State Defendants' motion. Additional new arguments were made (and even new facts asserted) in Plaintiffs' counsel's supplemental briefs. Counsel for the City reasonably had to expend time responding to these new arguments.

This reasoning shows the fundamental error by the trial court throughout the sanctions proceedings - it never considered the individual actions of the attorneys.

**V.**    Merits of the Pleadings Filed by Others

      A. Mr. Wood Adopts by Reference the Arguments Made by the Other Attorneys Appealing the Same Trial Court Rulings

To the extent that the issue of the propriety of the allegations made in the pleadings filed in the lower court, the other eight attorneys sanctioned by the trial court have filed appeals to this Court, which are pending as Case Nos. 21-1787, 21-1786, and 22-1010. Pursuant to Federal Rule of Appellate Procedure 28(i), Fed. R. App. P. 28(i) Mr. Wood adopts by reference the arguments made by those Appellants as to why the claims were properly asserted and maintained, including the arguments made in the Corrected Opening Brief of Appellants in Case No. 21-1786 at pp 17-59. (Case No. 21-1786, R. 27).

<u>CONCLUSION</u>

This Honorable Court should reverse opinion and order of the lower court. The movants in the lower court failed to establish what act, if anything, Mr. Wood had committed that would serve to violate Federal Rule of Civil Procedure 11, 18 U.S.C. § 1927 or that would justify the lower court's exercise of its inherent authority.  The imposition of sanctions were not individually tailored to any act of any one attorney and the sanctions were excessive and draconian given the fact that

the movants in the lower court were unable to establish Mr. Wood had any input into

the drafting of the complaint.

Respectfully submitted,

/s/Paul Stablein_____
Paul Stablein
Attorney for Interested Party-Appellant

Dated:        February 22, 2022

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(a)(7)(B)(i), I certify that this brief is written in a proportionately spaced, 14-point Times New Roman font, and contains 12,699 words, exclusive of the material not counted under Federal Rule of Appellate Procedure 32(f).

/s/Paul Stablein
Paul Stablein
Attorney for L. Lin Wood

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon all counsel of record through the Court's ECF system on February 22, 2022.

/s/Paul Stablein
Paul Stablein
Attorney for L. Lin Wood

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record Entry | Date | Description | Page ID # |
|---|---|---|---|
| 1 | 11/25/2020 | Complaint | 1-75 |
| 6 | 11/29/2020 | First Amended Complaint | 872-957 |
| 7 | 11/29/2020 | Plaintiffs' Emergency Motion for Declaratory, Emergency, and Permanent Injunctive Relief and Memorandum in Support Thereof | 1832-1849 |
| 62 | 12/7/2020 | Opinion and Order Denying Plaintiffs' "Emergency Motion for Declaratory, Emergency, and Permanent Injunctive Relief" | 3295-3330 |
| 69 | 12/22/2020 | Intervenor Defendant Robert Davis' Motion for Sanctions to Be Assessed against Plaintiffs and Plaintiffs' Counsel Pursuant to the Court's Inherent Authority and 28 USC §1927 | 3338-3349 |
| 73 | 12/22/2020 | City of Detroit's Motion to Dismiss and for an Award of Sanctions and supporting brief | 3544-3596 |
| 78 | 1/5/2021 | City of Detroit's Motion for Sanctions, for Disciplinary Action, for Disbarment Referral and for Referral to State Bar Disciplinary Bodies and supporting brief | 3616-3671 |
| 105 | 1/28/2021 | Defendants Whitmer and Benson's Motion for Sanctions under 28 U.S.C. §1927 and supporting brief | 4334-4450 |
| 157 | 7/16/2021 | Transcript for July 12, 2021 Hearing | 5303-5535 |

| 172 | 8/25/2021 | Opinion and Order | 6890-6999 |
|---|---|---|---|
| 173 | 9/8/2021 | Defendant Gov. Gretchen Whitmer and Secretary of State Jocelyn Benson's Notice regarding Sanctions Award | 7000-7017 |
| 174 | 9/8/2021 | Intervenor - Defendant City of Detroit's Time and Expense Records | 7018-7097 |
| 176 | 9/22/2021 | Emily Newman's Response and Objections to the State Defendants and Intervenor-Defendant City of Detroit's Time Submissions | 7111-7124 |
| 179 | 12/2/2021 | Opinion and Order | 7142-7168 |
| 180 | 12/2/2021 | Judgment | 7169-7170 |
| 185 | 12/6/2021 | Emily Newman's Notice of Appeal | 7179-7180 |